JULIO CARDENAS ET AL. *v.* ANTHONY J. MIXCUS ET AL.
(SC 16629)

Borden, Norcott, Katz, Palmer and Zarella, Js.

(*One justice concurring separately*)
Argued March 13, 2002—officially released June 17, 2003

*Steven D. Jacobs*, for the appellants (plaintiffs).

*Leo J. McManus*, for the appellees (defendants).

Opinion

BORDEN, J. The sole issue in this appeal is whether, when an employer intervenes pursuant to General Statutes § 31-293 (a)[1] in an action brought by its employee

---

[1] General Statutes § 31-293 (a) allows an employer to intervene in an action brought by an employee against a third party tortfeasor, providing in relevant part: "[A]ny employer or the custodian of the Second Injury Fund, having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee. . . . If the employer and the employee join as parties plaintiff in the action and any damages are recov-

against a third party tortfeasor, offer of judgment interest awarded pursuant to General Statutes § 52-192a[2]

ered, the damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of the recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting the recovery. . . . If the damages, after deducting the employee's expenses as provided in this subsection, are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. No compromise with the person by either the employer or the employee shall be binding upon or affect the rights of the other, unless assented to by him. . . . Notwithstanding the provisions of this subsection, when any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury and the injured employee has received compensation for the injury from such employer, its workers' compensation insurance carrier or the Second Injury Fund pursuant to the provisions of this chapter, the employer, insurance carrier or Second Injury Fund shall have a lien upon any judgment received by the employee against the party or any settlement received by the employee from the party, provided the employer, insurance carrier or Second Injury Fund shall give written notice of the lien to the party prior to such judgment or settlement."

[2] General Statutes § 52-192a provides in relevant part: "(a) After commencement of any civil action based upon contract or seeking the recovery of money damages, whether or not other relief is sought, the plaintiff may, not later than thirty days before trial, file with the clerk of the court a written 'offer of judgment' signed by the plaintiff or the plaintiff's attorney, directed to the defendant or the defendant's attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney or, if the defendant is not represented by an attorney, to the defendant himself or herself. Within sixty days after being notified of the filing of the 'offer of judgment' and prior to the rendering of a verdict by the jury or an award by the court, the defendant or the defendant's attorney may file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment'. . . . If the 'offer of judgment' is not accepted within sixty days and prior to the rendering of a verdict by the jury or an award by the court, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. . . .

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an

must be based on the amount of the jury verdict, or on the amount of the judgment after apportionment of the damages between the employee and the employer. The named plaintiff, Julio Cardenas,[3] appeals[4] from the judgment of the trial court denying him offer of judgment interest. The plaintiff claims that, by first apportioning the damages between himself and his employer, A.S. Enterprises, Inc. (A.S. Enterprises), and, thereby, using his net recovery as the basis of the comparison with his pretrial offer of judgment, the trial court improperly denied him offer of judgment interest. We agree with the plaintiff and, accordingly, we reverse the judgment of the trial court denying the plaintiff offer of judgment interest.

The plaintiff brought this action against the defendants, Anthony J. Mixcus and Mary Mixcus, seeking damages for personal injuries that he allegedly had suffered from a fall at their home. Because the fall occurred during the course of his employment, the plaintiff received workers' compensation benefits from A.S. Enterprises, including lost wages and medical expenses. A.S. Enterprises intervened in the action pursuant to § 31-293 (a), seeking recovery of the amount that it had paid out to the plaintiff. Before trial, the plaintiff had filed an offer of judgment in the amount of $99,500.[5] The defendants did not accept the offer

amount equal to or greater than the sum certain stated in the plaintiff's 'offer of judgment', the court shall add to the amount so recovered twelve per cent annual interest on said amount . . . ."

[3] The named plaintiff's wife, Juana Cardenas, was also a plaintiff in the trial court. Neither she nor A.S. Enterprises, Inc., the named plaintiff's employer, which was an intervening plaintiff in the trial court, is a party to this appeal. Accordingly, we refer herein to Julio Cardenas as the plaintiff.

[4] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[5] The simultaneous offer of judgment tendered by Juana Cardenas for $15,000 is not at issue in this appeal.

within thirty days and, therefore, it was considered rejected under § 52-192a (a).

Following a jury trial, a verdict was returned in favor of the plaintiff in the amount of $104,805.[6] Thereafter, the plaintiff and A.S. Enterprises agreed that $17,000 represented full and final satisfaction of A.S. Enterprises' claim in the case. The defendants moved for apportionment pursuant to § 31-293 (a) and Practice Book § 17-1,[7] and the plaintiff objected to the defendants' motion, asserting his right to offer of judgment interest based on the total amount of the verdict. The trial court granted the defendants' motion for apportionment and, accordingly, apportioned the award in the following amounts: $87,805 to the plaintiff; and $17,000 to A.S. Enterprises. On the basis of the court's determination that the plaintiff's ultimate recovery, after apportionment, was less than the offer of judgment for $99,500, the trial court denied the plaintiff's request for interest pursuant to § 52-192a (b). This appeal followed.[8]

The plaintiff claims that, when an employer intervenes in an action pursuant to § 31-293, the trial court

[6] The jury also found in favor of Juana Cardenas, but did not award any damages on her claim for loss of consortium. That determination is not at issue in this appeal.

[7] Practice Book § 17-1 provides: "In all actions, whether the relief sought be legal or equitable in its nature, judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and the judicial authority may grant to a defendant any affirmative relief to which the defendant may be entitled, and may determine the rights of the parties on each side as between themselves insofar as a consideration of the issues between them is necessary to a full adjudication as regards the claim stated in the complaint."

[8] The defendants first assert that we should not consider the plaintiff's claim because he has not presented an adequate record for review. We disagree. It is true that, in the trial court, the plaintiff sought an articulation of the court's ruling denying him offer of judgment interest, and that when the articulation was denied, he did not seek appellate review thereof. Nonetheless, the basis of the trial court's ruling is adequately disclosed by the trial court file and the transcripts of three posttrial hearings.

must, in making the comparison required by § 52-192a, compare the offer of judgment with the jury verdict and not with the postapportionment award to the plaintiff. We agree.

Because this presents a question of statutory interpretation, our review is plenary. See *Wilson* v. *Planning & Zoning Commission,* 260 Conn. 399, 402, 796 A.2d 1187 (2002). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport,* [231 Conn. 418, 431, 650 A.2d 557 (1994)]. In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . *Bender* v. *Bender,* [258 Conn. 733, 741, 785 A.2d 197 (2001)]. Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Emphasis in original; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003).

We first examine the statutory language at issue. Section 52-192a (b) provides in relevant part: "After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff *has recovered an amount equal to or greater than the sum certain stated in the plaintiff's 'offer of judgment'*, the court shall add to the amount so recovered twelve per cent annual interest on said amount . . . ." (Emphasis added.) The question presented is whether, in the present case, the emphasized language means the amount awarded by the jury, or the amount ultimately apportioned to the plaintiff pursuant to § 31-293. The language of the statute is susceptible of either meaning. Furthermore, neither the legislative history accompanying the original enactment of § 52-192a nor the legislative history accompanying subsequent amendments to the statute address this issue.

The purposes of, and the policy concerns underlying, § 52-192a, however, strongly support the conclusion that, under the particular circumstances of the present case, the amount of the offer of judgment should be compared with the jury verdict rather than with the amount of the award due the plaintiff after apportion-

ment. "Our courts have consistently held that prejudgment interest is to be awarded by the trial court when a valid offer of judgment is filed by the plaintiff, the offer is rejected by the defendant, and the plaintiff ultimately recovers an amount greater than the offer of judgment after trial. . . . Moreover, an award of interest under § 52-192a is mandatory, and the application of § 52-192a does not depend on an analysis of the underlying circumstances of the case or a determination of the facts. . . . The statute is admittedly punitive in nature. . . . It is the punitive aspect of the statute that effectuates the underlying purpose of the statute and provides the impetus to settle cases." (Internal quotation marks omitted.) *Accettullo* v. *Worcester Ins. Co.*, 256 Conn. 667, 672, 775 A.2d 943 (2001).

The purpose of § 52-192a "is to encourage pretrial settlements and, consequently, to conserve judicial resources. . . . [T]he strong public policy favoring the pretrial resolution of disputes . . . is substantially furthered by encouraging defendants to accept reasonable offers of judgment. . . . Section 52-192a encourages fair and reasonable compromise between litigants by penalizing a party that fails to accept a reasonable offer of settlement. . . . In other words, interest awarded under § 52-192a is solely related to a defendant's rejection of an advantageous offer to settle before trial and his subsequent waste of judicial resources. . . . Of course, the partial settlement of a case does little for the conservation of our limited judicial resources. Accordingly, the ultimate goal in a multiparty lawsuit is the fair and reasonable settlement of the case on a global basis." (Citations omitted; internal quotation marks omitted.) *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 742–43, 687 A.2d 506 (1997).

These policy concerns demonstrate that § 52-192a is designed to create the incentive in the plaintiff to pro-

pose a reasonable offer of judgment, and in the defendant to accept such an offer. This set of incentives necessarily requires both parties to assess, in advance, how the ultimate fact finder, namely, the jury, would be likely to view the case, and to reach a settlement accordingly. That process of assessment would be skewed, however, if the parties were also required to factor in the apportionment of workers' compensation payments, which are not disclosed to the jury.

Moreover, to base the comparison on the postapportionment amount would create two different systems of assessment: one, for cases in which the plaintiff was not an employee when he or she was injured; and a second, for cases like the present, when the plaintiff was an injured employee. We see nothing in either the language or purposes of § 52-192a to justify such a dual system.

In addition, the statute's policy of encouraging pretrial settlements would be thwarted if we were to interpret § 52-192a as authorizing the denial of offer of judgment interest when the amount of damages recovered subsequent to apportionment pursuant to § 31-293 is less than the amount of the offer of judgment. Under such a rule, the incentive in the plaintiff would be to tender an offer of judgment lower than the expected preapportionment recovery, subtracting the amount that the employer would be entitled to recover pursuant to § 31-293. Subsequently, if a defendant were to accept such an offer, the plaintiff's employer would still have the option to exercise its lien rights against such a settlement under § 31-293, resulting in a lower total recovery for the plaintiff. Therefore, a plaintiff would have a significantly reduced incentive to tender a reasonable offer of judgment to a defendant in a case in which an employer would have a right to recovery under § 31-293. "[W]e presume that laws are enacted in view of existing relevant statutes . . . [and] we read each

statute in a manner that will not thwart its intended purpose or lead to absurd results." (Citations omitted; internal quotation marks omitted.) *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 583–84, 726 A.2d 502 (1999). Accordingly, we adopt the construction of § 52-192a that is consistent with its purposes, namely, that the relevant figure for determining whether to award interest under § 52-192a is the amount of the jury verdict, not the amount of the postapportionment judgment rendered pursuant to § 31-293.

The defendants argue that this court's decision in *Civiello* v. *Owens-Corning Fiberglass Corp.*, 208 Conn. 82, 544 A.2d 158 (1988), stands for the proposition that the court may not look to the jury verdict in determining whether to award offer of judgment interest. *Civiello*, however, is distinguishable from the present case. In *Civiello*, the plaintiffs brought an action against multiple defendants. Id., 83 n.1. Before trial, two of the defendants settled with the plaintiffs for $36,000. Id. In arriving at its verdict of $153,522 against the remaining defendant, however, the jury was unaware of the prior settlement.[9] Id., 88. The trial court ordered a remittitur of $36,000 in order to avoid unjustly enriching the plaintiffs. Id., 89. The plaintiffs appealed from the denial of interest on their offer of judgment. Id., 84. One of the issues on appeal was "whether a plaintiff who has obtained a jury verdict for an amount in excess of his offer of judgment, when that verdict later is properly reduced by the trial court to a sum less than that offer, is entitled to interest pursuant to § 52-192a (b) for having 'recovered an amount equal to or greater than' his offer of judgment." Id., 84–85. Under the facts of *Civiello*, we held that the plaintiffs were not entitled to offer of judgment interest. Id., 85. We reasoned that, "[w]here a jury verdict is properly deemed excessive and accord-

---

[9] General Statutes § 52-216a prohibits disclosing to the jury a settlement agreement with a joint tortfeasor.

ingly reduced by a remittitur when judgment is rendered, the statute could not have been intended to impose the interest penalty upon a defendant for failing to accept an offer of judgment exceeding the upper limit of reasonable compensation as determined by the court." Id., 91. Under such circumstances, "to make the amount of the jury verdict rather than the judgment thereon the criterion for determining whether a plaintiff has recovered more than his offer of judgment would create a disparity between court and jury trials inconsistent with the legislative intention that § 52-192a (b) apply to both in the same manner." Id., 92–93.

In ordering the remittitur, the trial court in *Civiello* had acted pursuant to General Statutes § 52-216a, which provides in relevant part: "If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur . . . ." The ordering of a remittitur pursuant to § 52-216a, then, occurs only when the court has made a determination that the verdict does not accurately reflect the actual damages suffered.

In the present case, however, there is no question that the verdict actually reflected full and fair compensation for the damages suffered. Here, the sole reason for the difference between the amount of the verdict and the amount of the judgment subsequently rendered upon the verdict was the involvement of § 31-293. Therefore, the policy concerns underlying *Civiello* are not present in this case. Construing § 52-192a (b) to apply to preapportionment damages in cases proceeding under § 31-293 will not lead to different results in court trials and jury trials. In contrast to cases in which a trial court orders a remittitur, a postverdict apportionment pursuant to § 31-293 has no effect on the amount of damages paid by the defendants in a case. Instead, § 31-293 merely affects the number of plaintiffs who must share in the total recovery.

The defendants further contend that certain language in § 31-293 suggests that offer of judgment interest may not be awarded in this case. Specifically, they point to the language of § 31-293 (a) providing that "[n]o compromise with the person by either the employer or the employee shall be binding upon or affect the rights of the other, unless assented to by him." The defendants argue that, because A.S. Enterprises did not participate in the offer of judgment, it was not bound by that offer. Therefore, the defendants contend that, even if they had accepted the plaintiff's offer of judgment, A.S. Enterprises nevertheless would have been able to continue the litigation against them, causing the defendants to pay more than the actual damages of the case, and the plaintiff to obtain a double recovery, which is contrary to one of the primary purposes of § 31-293. The defendants' argument is not persuasive.

The defendants concede in their brief that, under § 31-293, an employer's claim takes precedence over that of the injured employee. If the plaintiff's offer of judgment had resulted in any settlement of the claim, A.S. Enterprises would have received reimbursement for its expenses before the plaintiff received any money. Therefore, the hypothetical situation presented by the defendants presumes that A.S. Enterprises would act contrary to its own interests, ignoring money readily available through an existing lien, pursuant to § 31-293, on any settlement, in favor of costly, continued litigation.

Similarly, the only hypothetical situation in which the employer would have any further right on which to proceed against the defendants would be if the plaintiff had made an offer of judgment in an amount less than his employer's lien rights. In that situation, if the defendants were to accept the offer, they would, theoretically, remain exposed to a continuing claim by the employer in an amount equal to the difference between

the lien rights and the offer of judgment. That scenario, however, is merely a theoretical possibility, not a realistic one. In such a situation, there would be absolutely no incentive for the plaintiff to make such an offer of judgment, because its acceptance would leave him with nothing. We do not presume that a plaintiff would make such an irrational decision, contrary to his own interests.

In cases in which "more than one [statutory provision] is involved, we presume that the legislature intended [those provisions] to be read together to create a harmonious body of law . . . and we construe the [provisions], if possible, to avoid conflict between them." (Internal quotation marks omitted.) *Gipson* v. *Commissioner of Correction*, 257 Conn. 632, 651, 778 A.2d 121 (2001). Contrary to the defendants' argument, our interpretation of § 52-192a does not conflict with the two primary purposes of § 31-293, namely, to ensure that an employer is reimbursed for its expenses and to prevent an injured employee from obtaining a double recovery. See *Gurliacci* v. *Mayer*, 218 Conn. 531, 576, 590 A.2d 914 (1991). Because § 31-293 provides that the claim of the employer "take[s] precedence over that of the injured employee in the proceeds of the recovery," there is no real danger of either of these purposes being thwarted by the calculation of offer of judgment interest prior to apportionment. The award of offer of judgment interest does not constitute a double recovery, nor does it interfere with an employer's recovery. The only effect of an award of offer of judgment interest is to hold a defendant accountable for rejecting reasonable settlement offers, which *is* consistent with the purpose of § 52-192a. Therefore, our interpretation of § 52-192a (b) avoids conflict between the two statutes, while furthering the policy reasons underlying § 52-192a.

The judgment is reversed with respect to the trial court's denial of offer of judgment interest pursuant to

§ 52-192a (b), and the case is remanded to that court with direction to award interest thereunder; the judgment is affirmed in all other respects.

In this opinion NORCOTT, KATZ and PALMER, Js., concurred.

ZARELLA, J. concurring. I agree with the majority's conclusion in this case but write separately only to reaffirm my continuing belief in the plain meaning rule as expressed in my dissenting opinion in *State* v. *Courchesne*, 262 Conn. 537, 597, 618–19, 816 A.2d 562 (2003) (*Zarella, J.*, dissenting).